Good morning, Your Honors, and may it please the Court, my name is Chris Baker and I represent the Heidrich Appellants. I would like to reserve two minutes for rebuttal. I would like to spend the few minutes I have today focusing on two points. The first is the collateral estoppel effect of the Smigelski decision, and the second is that irrespective of collateral estoppel, the Smigelski court got it right. Pennymac's arbitration agreement was essentially an all-or-nothing agreement. Because it had an illegal PAGA waiver, it was entirely unenforceable. So the question is, is the PAGA waiver unenforceable? If the PAGA waiver is unenforceable, is the entire aspect of the agreement with respect to arbitration non-severable? And you say that PAGA's waiver is unenforceable, and then you've got a non-severance. That's the argument. That's exactly it. That's the argument, and that's the argument that the Smigelski court decided. With respect to the collateral estoppel impact, you have a final decision by the California Court of Appeal. There was a petition to the United States Supreme Court, not just the California Supreme Court, and it was affirmed. There is a final decision on the merits. For purposes of California collateral estoppel preclusive effect, how high up do you need to go on appeal? The law is ambiguous, Your Honor. This court has held it has to be final, and the petition to the California Supreme Court has to be denied. There's California law saying the California Court of Appeal is sufficient under any law. Either way, you've passed both of the hurdles. That's correct, Your Honor. And the Smigelski court found that PennyMac must now litigate non-PAGA causes of actions, and that is a result not of the trial court's error but because of PennyMac's drafting decision. Does it make any difference that the finality of the other decision took place while this case was on appeal? That is to say it took place after the decision by the district court? It does not make any difference, Your Honor. And I think that this court's opinion in Clements makes that clear as well as in geographic expeditions. In both of those cases, you had a quote-unquote final decision by the district court. While the case was then on appeal to this court, there was an intervening appellate court decision in the state courts. So the finality of the Smigelski decision with the court of appeal is collateral estoppel to this decision because of the Ninth Circuit opinion. And because the Smigelski court finally determined that the arbitration agreement is entirely unenforceable, that's it. That applies to the entire arbitration agreement. PennyMac's argument, which is that as long as PennyMac only moves to compel arbitration on specific claims, an illegal and unenforceable contract is enforceable as to those claims, doesn't make any sense. It's an argument that lacks merit. Well, let me ask you a question about the argument that if the Private Attorney General Act claim is procedurally deficient, in other words, you didn't wait long enough after notifying the California Labor and Workforce Agency to file suit, wouldn't it then be appropriate to dismiss the PAGA claim for lack of jurisdiction but then subject the remaining case to arbitration? It's not, Your Honor, because that's not what the district court did. The district court had to review the arbitration agreement with the PAGA claims as part of the complaint prior to determining whether or not it had supplemental jurisdiction. That's the first point. The second point is that the PAGA cause of action was administratively exhausted as to two of the PAGA claims because PAGA has that unfortunate differing exhaustion periods. You either have 33 days for items not referenced in 2699.5 and 65 days for items referenced in Labor Code section 2699.5. So part of the PAGA claim was going to stay no matter what, and when the district court reviewed the arbitration agreement, it had to, at a minimum, look at the complaint as a whole. But to get to the point of the, and it brings me to the point of the fact that the, you need to look at the agreement at the time it was signed to determine whether or not it's illegal. So to follow Justice Breyer, who explained that a contract to commit murder is illegal from its inception, period, same thing. An all-or-nothing contract to commit murder and, for example, mow someone's lawn is illegal from its inception, even if somebody only moves to enforce the mowing the lawn part of the contract. You need to look at the contract at the time it was signed and not in the manner in which somebody seeks to enforce the contract and determine severability. If it was severable, though, or expressly severable, would that be different? Yes. That you can either murder or mow my lawn, then maybe you'd have a different case. You would have a different case. It depends probably on how much you're paying for the lawn mowing versus the murder part. But the trick is whether it's severable. The trick is whether it's severable, and the Smigelski court has decided that. And even if you look at the merits, Your Honor, the Smigelski court got it right. You have an arbitration agreement and a map. Both contain very specific provisions on severance. They say only these provisions can be severed. Right? That evidences an intent of the parties that other provisions cannot be severed. And the illegal PAGA waiver was an other provision. Therefore, the entire agreement is illegal and cannot be enforced just as the Smigelski court held. And that's consistent not only with California law but with this Court's precedents. Because of the collateral estoppel effect of Smigelski, as well as the merits, these are both pure questions of law. The proper thing for this Court to do is to reverse the district court, find the arbitration agreement entirely unenforceable, and remand it for further proceedings. It would be entirely inefficient and inappropriate in these circumstances to simply remand the case for the district court to make the decision in the first instance because the denial to compel arbitration is immediately appealable. So we would just be back here in two years anyways. This Court's authority allows it to make these questions, answer these questions of law, and rule in the current context. And I would like to save the rest of my time for rebuttal. Okay. Thank you. Good morning. May it please the Court. Sean McLaughlin of Hillfarer and Burrill and my colleague, Warren Higgins, on behalf of Appellee Penny Mack. Are you splitting time? Sorry? Are you splitting time or is it just you? I will not split time, Your Honor. Okay. Article III courts are required to focus on their jurisdiction. And here the district court correctly and narrowly focused on the sole federal claim over which it had original jurisdiction. And the district court correctly declined to consider the state law wage and hour claims that were alleged by three of the four appellants. The appellants now are asking this court to put the cart before the horse and to assume that the state law claims should have been considered by the district court in analyzing the narrow question of whether or not to compel arbitration of the sole federal claim that was before the district court. What do you do with Smigelski? Well, I encourage you to ignore Smigelski. Because? As it relates to this case, there are important distinctions that make it not at all identical and therefore it has no conclusive effect. Is it the same contractual language? The language is the same contractually, yes. Right. And the Smigelski court says that the arbitration clause as a whole is unenforceable because the PAGA claim is unenforceable and the arbitration provision is not severable, correct? As applied to California state law wage and hour claims. Imagine, however, that this... I'm not sure I read Smigelski so narrowly. I think they just said it's unenforceable. Well, Your Honor, they only had in front of them state law wage and hour claims. So, of course, they can only have a holding that relates to the claims they considered. They didn't pass the question. Why would it be different? Why would the analysis be different? I mean, the question is whether the arbitration provision is valid. And if it's not, whether it's severable. Why does that depend on whether they're state or federal claims at issue? Imagine that the Smigelski plaintiff had alleged not a PAGA claim but a wrongful termination claim. The fact that his agreement contained an arguably invalid PAGA waiver would have no bearing whatsoever on the enforceability of that agreement as to the wrongful termination claim. I'm not sure that's true, but that's not the case we have in front of us in any event. Correct. The case that we have in front of us is the case that the district court confronted, which was a Fair Labor Standards Act asserted by four appellants, one of whom is from Texas and who cannot even assert PAGA claims. So what do we do with his agreement to arbitrate and his Fair Labor Standards Act claim? The claim they sought was to assert a nationwide class, a nationwide collective group under the FLSA, including people from Florida, Texas, places where they couldn't assert a PAGA claim. What are we to do with that FLSA claim? It can't be not compelled to arbitration because a California claim that the district court didn't consider might hypothetically implicate some other part of the agreement. And what do we do with the fact that the three of the four appellants signed their arbitration agreements in 2013, before the Eskanian decision had even announced this brand-new rule of California law, which was the basis for the ultimate Smigelski decision? Remember, Mr. Bacon tells you when it's signed is what matters. Let me ask you that question about Eskanian. Does Eskanian apply only prospectively to contracts signed after Eskanian? No, but the question So what's the point then of saying, well, they signed it before Eskanian? If the appellants signed agreements in 2013, which is the case here, and the language in the contract in 2013 was at that point in time lawful, certainly not unlawful, and But you just answered my question in saying, when I asked you, well, does Eskanian apply to contracts before Eskanian was decided, you said it does apply. I'm not saying that Did you say that? I'm not saying that Eskanian doesn't state whatever California law is. And applies to contracts entered into before Eskanian was decided, correct? Yes, but when we asked the question, is a contract enforceable, and this is what you When we asked the question, is a contract enforceable, and if the argument being advanced is that the contract is unenforceable because a portion of the contract has subsequently been made unenforceable by a later developed California rule, Eskanian, which comes out in late 2014, can you then go back and say that the entire agreement at the time it was unenforceable as to every conceivable kind of claim that an employee might bring? When was the contract entered into in Smigelski? 2015. So after. After. So this is an important distinction. And, in fact, it's a distinction that was underscored by some of the California authorities that we pointed out which attempt to apply Eskanian. The Franco case, for example, encountered very similar language and noted that at the time that that agreement had been entered into, it was perfectly lawful language under the controlling FAA and California authorities. And the fact that it later was language that was found unenforceable by Eskanian, the Franco case said, we're just going to treat it as a null passage within the contract. We're still going to compel arbitration of the wage and hour claims, but we're not going to compel arbitration of the POGA claim. So these things are directly related, and the reason that Smigelski has no application in this case is because you have people who are not from California. You have people who signed agreements before Eskanian was even the California law. Go back to looking at what the district court was actually asked to look at. The district court was not asked to compel anything to arbitration other than the FLSA claim. And, in fact, at the same time, the district court was asked to dismiss the State law claims on the basis of several different grounds. One, as Judge Molloy pointed out, was that the POGA claim was — it was defective. It had been prematurely filed, which is a jurisdictional defect, and the district court could have dismissed it on its merits, but instead said, I'm not considering the POGA claim. I'm just focusing on the FLSA claim. Likewise, the district court could have dismissed all of the State claims, POGA and the State law wage and hour claims, on the basis of Colorado River abstention doctrine, because the Smigelski case was already pending and already making those claims. And now, more than ever, where the Smigelski case is back from the State court appellate process and is chugging along in State court, where we're engaged in discovery. Later today, we'll be meeting and conferring on discovery disputes with appellant's counsel. All those State law claims could have and should have been not within the district court and should have been allowed to stay where they belonged in the State court. I'm interested in your argument that you've got kind of a nationwide issue where you've got people outside of the State of California. Wouldn't their agreement still be bound by California law or not? I don't know. Is there evidence in here? I haven't looked at that, but do you know the answer? Was there a California choice of law provision in the agreement? There is not a California choice of law provision in the agreement. The important thing to remember is that when appellee filed its motion in the district court, it asked to enforce the agreements against all of the appellants under the Federal Arbitration Act, not under California law. The issues of California law were only ever raised by the appellants in an attempt to get the district court to engage on the State law claims. The district court did not accept that invitation. It never engaged on the State law claims. It said, I am going to focus like a laser on the FLSA claim. And what did it have in front of it that had been published just days before it issued its decision? It had the EPIC decision, where you have, is there an agreement? Yes. Does it cover the FLSA claims? Yes. What does the FAA require in that circumstance under EPIC? It requires that the district court enforce an agreement, even an agreement that provides for individual arbitration, because that's what EPIC did. So fitting this into the construct, is your argument that because of these additional plaintiffs that are outside of California and the State law claims, that makes it so that the arbitration provision, it just either wasn't decided or it is enforceable as to claims, or are you saying that it's severable as to State law claims? My point is twofold. First, the fact that you have non-California appellants and non-California claims means that Smigelski did not consider identical issues to the issues that were in front of the district court and that are in front of this court. And therefore, collateral estoppel shouldn't apply at all. My second point is that the district court correctly focused on the federal FLSA claims where it knew that what was being sought was a collective action on behalf of people, including people outside California who could never assert PAGA or other California-specific claims. And therefore, the district court did not allow itself to get distracted by these arguments of State law issues where those arguments have no bearing on the straightforward question of what do you do with an FLSA claim where there's a plainly applicable agreement and where EPIC has just said that you must enforce individual agreements against FLSA claims. I'm taking you over time, and I'm sure you're well aware of the language, but I'll just read you what to me seems like the determinative sentence out of Smigelski. That court writes, because the arbitration agreement has been found to be unenforceable, Penny Mac cannot compel arbitration of any of Smigelski's causes of action, including causes of action that would otherwise be arbitrable. That's a pretty broad statement. That is to say, causes of action that would otherwise be arbitrable are not because the PAGA claim cannot be waived, and it's not severable. That's a broad holding as a matter of California law. I do not disagree that that is a broad ruling. Of course, it only considered the otherwise arbitrable claims that were before the Smigelski court, which did not include FLSA claims. I heard that argument. All right. Okay. Yes. Okay. Thank you. Thank you. I will try to be brief, Your Honors. The first thing you need to decide when there is a motion to compel arbitration is whether a valid agreement to arbitrate exists. That's step one. You don't get to focus on which claims. Could it be valid as to some plaintiffs and not valid as to others? I think that's the question that I hadn't focused on before arguing here. And it's a fair question. When the motion to compel arbitration was brought, there were three California plaintiffs. That is the motion that the district court ruled on. A Texas person joined the case later in the case, and there was never a motion to compel as to the Texas person, but that person filed a consent to join under the Fair Labor Standards Act. Whether or not the arbitration agreement is enforceable in Texas is not before this court. The only thing before this court is whether or not it's enforceable in Texas. You're right. The substance isn't, but couldn't the question have an effect on the collateral estoppel effect? Certainly not as to the California plaintiffs. As to a choice of law provision with respect to an out-of-state person who files a consent to join, that's an issue for a later date. It would depend on a choice of law analysis. The last thing, Your Honor, with respect to Iskanian, Iskanian was retroactive. One of the California plaintiffs here signed the agreement after Iskanian, and Iskanian just, I believe, confirmed California law at the time as to the enforceability of a PAGA waiver. And unless the court has any other questions, I will sit down. Okay. Thank you very much. The case of Heydrich v. Penny Mac now submitted for decision. Thank you for your argument. We'll now be in adjournment. We've got guests here, students from Australia. We're very glad to have you here. While we conference, our law clerks will tell you everything that we would not otherwise tell you, and we'll come back after conference and talk with you. Okay. We're now in adjournment.
judges: W. Fletcher, R. Nelson, Molloy